**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: | § |
| | § Chapter 11 (Subchapter V) |
| NEW-TRONICS LTD.,[1] | § |
| | § Case No. 23-42553-elm11 |
| Debtor. | § |
| | § |

**FIRST AMENDED CHAPTER 11 SUBCHAPTER V**
**PLAN OF NEW-TRONICS LTD.**

Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Jacob J. King
Texas Bar No. 24136951
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 4000
Dallas, Texas 75201
tberghman@munsch.com
jking@munsch.com

*Counsel to the Debtor-in-Possession*

---

[1] The last four digits of the Debtor's federal tax identification number are 0973. The location of the Debtor's service address is: 113 Cambridge Park Trail, Weatherford, Texas 76088.

**Error! Unknown document property name.**

## Introduction

### A.     New-Tronics Ltd. Background

1.      New-Tronics Ltd. (the "Debtor") manufactures base and mobile antennas in Weatherford, Texas.[2]  At Weatherford, the Debtor's operations include sales, billing, shipping, and final assembly, as well as the tuning and packaging of base station and mobile antennas operating from 1.8 MHz to 2.4 GHz.  Relying on older technology, the antenna and radio market in the United States is consolidating and shrinking, but the Debtor's customer base is global.  In the last few years, the Debtor has sold its products to customers in Asia, Australia, the Middle East, and Europe.  In 2021, the company had gross revenues of $1.7 million with a $31,000 profit.  In 2022, the company had $2.3 million in gross revenue at a $270,000 loss, and in 2023 the company had $1.5 million in gross revenue at a $560,000.00 loss.

2.      The current iteration of the Debtor is the successor to an antenna manufacturing company founded in the 1950s, New-Tronics Antenna Corporation.   In December 2002, New-Tronics Antenna Corporation was restructured into the Debtor, a Texas limited partnership taxable as a corporation for federal income tax purposes. Wonderboys LLC ("Wonderboys") is the Debtor's general partner (1%) and provides limited management services to the Debtor.  The limited partners of the Debtor are Wonderboys at 54.5% and Clyde and Alice Ford at 44.5%.

3.      At the time of the reorganization of the business in 2002, the Debtor's predecessor was the obligor on a promissory note dated February 2000 and payable to Clyde and Alice Ford (the "Note"), in the principal amount of $2.8 million.  As part of the restructure, the original obligor (*i.e.*, the predecessor of the Debtor) on the Note was dissolved, and the Debtor assumed at least partial responsibility for the Note.  The Debtor made payments to Clyde and Alice Ford from 2002 through 2008.  But in 2008, following unfavorable economic conditions and diminished financial performance of the Debtor, Debtor ceased payments.  From 2008 through the present (*i.e.*, fifteen (15) years), no payments have been made.

4.      By 2020, Clyde and Alice Ford had both deceased, and their daughter, Vicki Ford ("Ford"), became executrix of their estate.  Ford made demand on the Debtor for payment of the Note.  In response, and through the present and among other arguments, the Debtor has taken the position that the lapse in payments constitutes waiver.  Ford disputes any alleged waiver and maintains that she has timely sought Note payment.  In 2021, Ford initiated litigation (the "Ford Litigation") in the 142nd Judicial District Court for Midland County, Texas, to attempt to collect. The Ford Litigation has caused the Debtor to incur significant legal fees (in excess of $150,000) and has caused Ford to incur legal fees (according to Ford roughly $89,789.79 as of the Petition Date).  Additionally, 2022 and year-to-date 2023 have seen reduced economic performance for Debtor, including due to increased costs of raw materials, inflation, and slower sales.

5.      The Debtor has traditionally operated on a cash basis.  Customers placing orders with the Debtor typically fund some portion of the purchase price up front, permitting the Debtor to purchase a portion of the necessary materials to complete the order, with the customer paying

---

[2]     The Debtor utilizes a third-party maquiladora in Los Comales, Mexico, to fabricate, assemble, and package certain parts.

Error! Unknown document property name.

the balance of an invoice upon delivery.  Accordingly, the Debtor has no traditional secured lender.
The Debtor leases its space in Weatherford and otherwise leased certain storage containers, which
lease the Debtor recently chose not to renew.  The Debtor has no typical long-term contracts.  The
Debtor has long-standing relationships with its vendors.  Working in a niche (and shrinking)
market, the Debtor relies heavily on certain suppliers of goods, which vendors have continued to
work with the Debtor throughout the Bankruptcy Case.

6.      The Debtor's debts consist of ordinary trade debt, including (a) vendors;
(b) landlord, utility providers, and similar vendors relating to the business; and (c) employee costs.
Excluding any claim related to the Ford Litigation, the outstanding unsecured non-contingent
liabilities of the Debtor total approximately $172,000.  Including the Ford Settlement Claim, the
outstanding unsecured non-contingent liabilities of the Debtor total approximately $1,672,000.00.

## B.    **Developments During the Bankruptcy Case**

7.      On August 29, 2023 (the "Petition Date"), the Debtor filed its *Voluntary Petition*
[Doc. 1] along with its most recent tax return [Doc. 1–5], Balance Sheet [Doc. 1–4], Statement of
Cash Flows [Doc. 1–3], and Statement of Operations [Doc. 1–4].  On the Petition Date, the Debtor
also filed its *Emergency Motion for Entry of Order Authorizing Payment of Pre-Petition Employee
Wages* [Doc. 3] and *Emergency Motion for Entry of an Order Authorizing Payment of Critical
Vendor Claims* [Doc. 2].  On August 30, 2023, the Debtor filed its *Emergency Motion for Entry of
Order Authorizing the Debtor to Continue to Operate Bank Accounts* [Doc. 21] to address an issue
arising when PNC Bank placed the Debtor's bank accounts under an administrative freeze.  On
September 8, 2023, the Debtor filed its *Motion Pursuant to 11 U.S.C. § 366 Regarding Utilities*
[Doc. 42].  On August 31, 2023, the Bankruptcy Court held a hearing and granted all essential
relief requested by the Debtor to maintain its business operations.  Also on August 31, 2023, Areya
Holder Aurzada was appointed as Subchapter V Trustee [Doc. 26].

8.      During the Bankruptcy Case, the Debtor has continued to operate its business.  On
August 29, 2023, the Debtor filed its *Application to Employ Munsch Hardt Kopf & Harr, P.C. as
General Counsel* [Doc. 7] and its *Motion to Establish Procedures for Interim Compensation and
Reimbursement of Expenses* [Doc. 8], pursuant to which the Debtor obtained authority to retain
and make interim payments to bankruptcy counsel.

## C.    **Summary of the Plan**

9.      The Plan provides a path to confirmation and a successful exit from Chapter 11 for
the Debtor through a reorganization and post-confirmation continuation of the business.  The
Debtor believes that the Plan will yield the highest and best return for creditors and
parties-in-interest.

10.     Under the Plan, the Debtor shall make Disposable Income Payments and Quarterly
Payments, as those terms are defined herein, for a period of forty-eight (48) months.  Pursuant to
§ 1129(a)(11) or § 1191(b), as applicable, the Debtor will be able to make all payments under the
Plan or there is a reasonable likelihood that the Debtor will be able to make all payments under the
Plan.

Error! Unknown document property name.

# ARTICLE I.
## DEFINITIONS AND INTERPRETATION

1.1    <u>Rules of Interpretation</u>.

(i)    Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)    Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

1.2    <u>Definitions</u>. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

**"<u>Administrative Claim</u>"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim. For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

**"<u>Administrative Claims Bar Date</u>"** means the day that is thirty (30) days after the Effective Date.

**"<u>Administrative Tax Claim</u>"** means any *ad valorem* tax claim assessed against, or payable by, the Debtor or the Estate or its property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

**"<u>Allowed</u>"** as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i)    which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules in an amount other than zero or unknown, and as to which:

a.    no proof of Claim has been timely filed; and
b.    no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

**Error! Unknown document property name.**

(ii)    as to which a proof of Claim has been timely filed and either:

    a.   no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or

    b.   such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)   which has been expressly allowed under the provisions of this Plan; or

(iv)   which has been expressly allowed by Final Order of the Bankruptcy Court.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtor; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**Avoidance Actions**" means any and all rights, claims, or actions which the Debtor may assert on behalf of its Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code.

"**Bankruptcy Case**" means Bankruptcy Case No. 23-42553 pending in the United States Bankruptcy Court for the Northern Division of Texas, Fort Worth Division.

"**Bankruptcy Code**" means 11 U.S.C. §§ 101, *et seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

Error! Unknown document property name.

"**Bar Date**" means November 7, 2023, for claims of persons other than Governmental Units, and February 25, 2024, for claims of Governmental Units.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Causes of Action**" means any claim or cause of action of the Debtor or the Estate against any person, including on account of receivables, insurance claims, breach of fiduciary duty claims, and any other claim or cause of action.

"**Claim**" means a claim against one or more of the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including claims first arising after the Petition Date, regardless of whether the same would otherwise be a claim under section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be sixty days (60) days after the Effective Date, except with respect to Administrative Claims, Rejection Damages Claims, and Disputed Claims, as applicable, each specifically set forth herein.

"**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled, or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Cure Claim**" means a Claim required to be paid under section 365 of the Bankruptcy Code in order to assume any Executory Contract, including, as may be applicable, any nonmonetary portion thereof.

"**Debtor" or "Debtor-in-Possession**" means the Debtor in this chapter 11 case, New-Tronics Ltd.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)       has been disallowed by a Final Order of the Bankruptcy Court;

(ii)      which has been expressly disallowed by agreement under the provisions of this Plan;

(iii)     is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or

(iv)      is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disposable Income**" means sixty percent (60%) of the Debtor's profit for a given year during the Repayment Period.

"**Disposable Income Payments**" means payments of Disposable Income.

"**Disputed Claim**" means, with respect to any Claim, any Claim that is not yet Allowed.

"**Effective Date**" means the first Business Day that is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed; or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay that is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article XI hereof are satisfied.

"**Equity Interests**" means all stock, shares, or other securities evidencing any ownership of any equity or ownership interest of the Debtor.

"**Estate**" mean the Debtor's estate created pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code, except to the extent rejected on or prior to the Confirmation Date by the Debtor.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)       the time to appeal or petition for review, rehearing, or certiorari has expired and as to which no appeal or petition for review, rehearing, or certiorari is pending; or

Error! Unknown document property name.

(ii)     any appeal or petition for review, rehearing, or certiorari has been finally decided and no further appeal or petition for review, rehearing, or certiorari can be taken or granted.

"**Ford Claim**" means Claim 7 filed in the Claims Register by Vicki Ford, Individually, and as Independent Executrix of the Estates of Clyde Ford and Alice Ford in the amount of $2,113,858.38.

"**Ford Settlement Agreement**" means Article X of the Plan.

"**Ford Settlement Claim**" means the Allowed portion of the Ford Claim identified as an Allowed Unsecured Claim in the amount of $1,500,000.00.  The Ford Settlement Claim is included as a Class 4 Allowed Unsecured Claim in the amount of $1,500,000.00.  For the avoidance of doubt, the remainder of the Ford Claim, over and above $1,500,000.00, is a Disallowed Claim.  The Ford Settlement Claim is held by Vicki Ford, Individually, and as Independent Executrix of the Estates of Clyde Ford and Alice Ford.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Ordinary Course**" means activities and transactions that are typical and customary for the Debtor-in-Possession's business operations and necessary for the continuation, preservation, and operation of the business.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies, or political subdivisions thereof.

"**Petition Date**" means August 29, 2023.

"**Plan**" means this *First Amended Chapter 11 Subchapter V Plan of New-Tronics Ltd.* either in its present form or as it may be altered, amended, or modified from time to time.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**Pro Rata**" means (i) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or (ii) the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

Error! Unknown document property name.

**"Professional Claim"** means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

**"Quarter"** means the four (4) time periods, for any given year, from January to March, April to June, July to September, and October to December.

**"Quarterly Payments"** means payments in the amount of $9,600.00 made to the Allowed Unsecured Claims in Class 4 on the first Business Day of the first month of each Quarter.

**"Rejection Damages Claim"** means the Claim asserted by a counterparty to an Executory Contract that is rejected by the Debtor but that is not an Administrative Claim.

**"Rejection Damages Claim Bar Date"** means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

**"Release Agreement"** means the settlement agreement and mutual release entered into and effective as of [   ], 2024 between the Debtor-in-Possession, Wonderboys, LLC ("Wonderboys"), Roy Shrode ("Shrode"), Michael Boyer ("Boyer"), Vicki Ford ("Ford"), and the probate estate of Alice and Clyde Ford (the "Ford Estate," each individually a "Party" and collectively the "Parties").  The Settlement Agreement, signed and executed, is attached hereto as **Exhibit C**.

**"Reorganized Debtor"** means the Debtor on and after the Effective Date.

**"Repayment Period"** means the forty-eight (48) month period contemplated and set forth under this Plan, incorporated hereto under the Settlement Agreement, and in satisfaction of 1191(a), which period shall commence on the first Business Day of the Quarter following the month in which the Effective Date occurs.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

**"Secured Claim"** means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtor or the Estate arising prior to the Petition Date.

 **"Significant Expenditure"** means an action or transaction that involves a single expenditure or a series of related expenditures exceeding $100,000.00.

Error! Unknown document property name.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) all or substantially all of the Debtor's assets are transferred to the Reorganized Debtor and distributions under the Plan have commenced; or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

"**Unsecured Claim**" means any alleged Claim against the Debtor that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    Classification Generally.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includable in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2    Unclassified Claims.  The following types of Claims are not classified under the Plan:

Administrative Claims
Administrative Tax Claims

2.3    Classified Claims and Interests.  Claims and Equity Interests are classified under this Plan as follows:

Class 1:      Priority Claims (Unimpaired)
Class 2:      Secured Tax Claims (Unimpaired)
Class 3:      Other Secured Claims (Unimpaired)
Class 4:      Unsecured Claims (Impaired)
Class 5:      Equity Interests (Not Applicable by Operation of Subchapter V)

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1    Administrative Claim Applications and Deadline.  Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business; (c) Cure Claims; and (d) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtor, the United States Trustee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the

Error! Unknown document property name.

Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtor and the Estate, the Reorganized Debtor, and the property of any of the foregoing, including property transferred pursuant to the Plan.  Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2    Treatment of Allowed Administrative Claims.  Except with respect to Professional Claims (*see* Section 3.3 below) and Administrative Tax Claims (*see* Section 3.4 below), and unless previously paid, each holder of an Allowed Administrative Claim shall be paid, in full satisfaction of, release and discharge of, and in exchange for such Allowed Administrative Claim, regular payments in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, throughout the Repayment Period, beginning no later than ten (10) Business Days after the Effective Date or ten (10) Business Days after the date that an order is entered approving the Allowed Administrative Claim, whichever occurs later, totaling not less than the full unpaid amount of such Allowed Administrative Claim.

3.3    Treatment of Professional Claims.  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1) and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; (vi) any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary; and (vii) Professional Claims shall be paid on the Effective Date, or thirty (30) days after approval of such fees by the Bankruptcy Court as applicable.

3.4    Administrative Tax Claims.  Administrative Tax Claims, and any liens securing the same, are not affected, prejudiced, discharged, or treated by this Plan and shall survive this Plan without need for any action on the part of the holder thereof.  Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, by the Reorganized Debtor, as soon as practicable after the Effective Date or when the same otherwise becomes due and payable.  Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative

Error! Unknown document property name.

Tax Claim.  Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in the Reorganized Debtor, as of the Effective Date.

    3.5    Section 505.  For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtor and the Estate reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to the Reorganized Debtor.

### ARTICLE IV.
### PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

    4.1    Class 1:  Priority Claims.  In full and final satisfaction, release, and exchange of each Priority Claim, each Priority Claim, to the extent Allowed, shall be paid by the Reorganized Debtor, in full, but only to the extent Allowed, no later than ten (10) Business Days after (i) the Effective Date or (ii) the date that the Priority Claim otherwise becomes Allowed, whichever occurs later.  Class 1 is not impaired under the Plan.

    4.2    Class 2:  Secured Tax Claims.  No Secured Tax Claim is Allowed in this Plan and each Secured Tax Claim shall be subject to such objection or section 505 contest as may otherwise exist.  Each Secured Tax Claim, to the extent Allowed, shall be paid by the Reorganized Debtor, together with all applicable interest after the Petition Date and the Effective Date as provided for under applicable law, as is otherwise appropriate under applicable law or, if defaulted on by the Effective Date, within ten (10) Business Days thereafter in cash.  All liens securing any Secured Tax Claim shall remain in place with the same validity, extent, and priority as otherwise exists under applicable law and shall remain attached to all property of the Debtor, the Estate, or the Reorganized Debtor, including any inchoate lien, notwithstanding anything contained in this Plan to the contrary.  Class 2 is not impaired under the Plan.

    4.3    Class 3:  Other Secured Claims.

        4.3.1    Identification.  Class 3 consists of any Secured Claim that is not a Secured Tax Claim.

        4.3.2    Classification.  Each Creditor in Class 3 shall be deemed to be a separate Class under this Plan but only with respect to any collateral and any Secured Claim.  Any deficiency Claim shall otherwise be bifurcated into a Class 4 Claim.

        4.3.3    Allowance.  Nothing in this Plan Allows any Class 3 Secured Claim, and the same shall be subject to allowance and to such objection as may otherwise exist.

        4.3.4    Liens.  All liens and security interests securing any Class 3 Secured Claim shall remain attached to property of the Debtor and the Estate, with the same validity, extent, and priority as otherwise exists, and any such property shall vest in the Reorganized Debtor, subject to the same notwithstanding anything contained in this Plan to the contrary.

Error! Unknown document property name.

4.3.5   <u>Interest</u>.   To the extent permitted by applicable law and sections 502 and 506(b) of the Bankruptcy Code, interest arising after the Petition Date but before the Effective Date shall be included in the Allowed amount of each Class 3 Secured Claim.

4.3.6   <u>Treatment</u>.   No later than thirty (30) days after the Effective Date, the Reorganized Debtor shall elect one of the following treatments with respect to each Secured Claim: (i) surrender the underlying collateral to the Creditor and use its reasonable, good faith efforts to do so, in full and final satisfaction of the Secured Claim, but subject to any deficiency Class 4 Unsecured Claim as is otherwise appropriate; or (ii) retain the collateral and cure and reinstate the underlying debt and obligation, thereafter paying the Allowed Secured Claim according to such terms.  If no option is elected, but provided that the Secured Claim is scheduled on the Schedules, option (ii) shall be the default on the 31st day after the Effective Date.

4.3.7   <u>Impairment</u>.  Class 3 is not impaired under the Plan.

4.4   <u>Class 4: Unsecured Claims</u>.

4.4.1   <u>Identification of Class and Allowance of Claim</u>.  Class 4 consists of: (i) the Ford Settlement Claim; and (ii) any other Unsecured Claim, subject to Allowance as otherwise provided for in this Plan and all applicable law.  Nothing in this Plan Allows any Unsecured Claim, unless expressly provided otherwise.

4.4.2  <u>Treatment</u>.  Except to the extent that a holder of an Allowed Unsecured Claim and the Debtor or the Reorganized Debtor, as applicable, agree to less favorable treatment of its Allowed Unsecured Claim, each holder of an Allowed Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Unsecured Claim, a Pro Rata share of the Quarterly Payments and the Disposable Income Payments for a period of forty-eight (48) months (*i.e.*, the Repayment Period).  The Ford Settlement Claim's Pro Rata share shall not decrease after the Effective Date of the Plan and shall increase upon satisfaction of other creditors' claims. The Reorganized Debtor shall be the disbursing agent for payments to Class 4.  Distributions of Quarterly Payments shall be made, for each Quarter in the Repayment Period, on the first Business Day, of the first month, of each Quarter, in the amount of $9,600.00. Distributions of the Disposable Income Payments shall be made not later than forty-five (45) days following the end of the Debtor's fiscal year.  For the avoidance of doubt and by way of example only, assuming an Effective Date of November 1, 2024, the Quarterly Payments shall issue on January 2, 2025, and the first Business Day, of the first month, of each Quarter thereafter, and the Disposable Income Payments shall be made not later than the forty-fifth (45th) day after January 1, 2026, and January 1, 2027, and January 1, 2028, and January 1, 2029.

4.4.3  <u>Impairment</u>.  Class 4 is impaired under the Plan.

4.5   <u>Class 5: Equity Interests</u>.  Pursuant to § 1191 of the Bankruptcy Code, equity shall be unaffected by the Plan.

**Error! Unknown document property name.**

### ARTICLE V.
### MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    <u>Corporate Operations</u>.  The Reorganized Debtor will continue to operate with the primary purpose of conducting its business.

5.2    <u>Vesting of Assets</u>. On the Effective Date, and automatically, without need for further order, document, or instrument, all property of the Debtor and the Estate shall vest in the Reorganized Debtor free and clear of all liens, claims, interests, and encumbrances, except to the extent any such lien, claim, interest, or encumbrance is preserved under this Plan.

5.3    <u>Plan Funding</u>.  The Debtor anticipates that all distributions made under the Plan will be funded from future earnings, which will not be less than the Disposable Income Payments and Quarterly Payments for the forty-eight (48) months of the Repayment Period.

5.4    <u>Assumption of Executory Contracts</u>.  The Debtor assumes its lease with D.D.F.W. Triangle Properties, Inc. listed on Schedule G [Doc. 50, ECF page 24].  The lease is not in default and there are no cure obligations associated with the assumption.

Any other Executory Contracts not assumed herein shall be rejected as of the Effective Date automatically and without need for further order, document, or action, subject to the filing of Rejection Claims as otherwise appropriate.  The failure of any counterparty to any Executory Contract being assumed to object to such assumption or Cure Claim by the deadline otherwise set to object to this Plan shall forever waive and release any such objection.  The Confirmation Order shall be a judicial determination and judgment of the amount of any such Cure Claim and shall be entitled to full *res judicata* and collateral estoppel effects regarding the same.  For the avoidance of doubt, any such objection to the assumption or Cure Claim applicable to any Executory Contract may be solely to such assumption or Cure Claim and need not object to any other provision of this Plan.  For the further avoidance of doubt, the Debtor reserves its rights to withdraw any Executory Contract from such assumption, and to instead reject the same, at any time prior to the Effective Date, by filing a notice of the same in the Bankruptcy Case.

5.5    <u>Management of the Reorganized Debtor</u>.  Management of the Reorganized Debtor shall be the same as the management of the Debtor on the Petition Date.

5.6    <u>Net Operating Losses</u>.  All NOL's belonging to the Debtor shall remain and shall vest in the Reorganized Debtor.

5.7    <u>Automatic Stay</u>.  The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

5.8    <u>Incorporation of Rule 9019</u>.  To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

Error! Unknown document property name.

5.9     Rights Under Section 505.  All Claims for taxes by Governmental Units and any claim for a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall vest in the Reorganized Debtor.  The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.10     Corporate Existence.  The Reorganized Debtor shall retain its corporate existence and attributes and may amend all governing documents as is otherwise appropriate.  As soon as practicable after the Effective Date, the Reorganized Debtor shall amend its corporate charter to include a provision prohibiting them from issuing nonvoting securities.

5.11     Incorporation of Exhibits.  Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1     Confirmation.  The Debtor submits that the Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) the Plan is "proposed in good faith" within the meaning of section 1129(a)(3) of the Bankruptcy Code; (iii) the Plan is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iv) the Plan is feasible as the Debtor will be able to make the distributions contemplated under the Plan or there is a reasonable likelihood that the Debtor will be able to make the distributions contemplated under the Plan, as required by Bankruptcy Code sections 1129(a)(11) and 1191(c)(3)(A)(i) and (ii).

6.2     Voting.  Class 4 may vote on the Plan.  If all voting Classes carry, then the Plan will be deemed consensual pursuant to section 1191(a).  If any or all voting classes do not carry, then the Debtor will proceed to seek confirmation of the Plan on cramdown pursuant to section 1191(b).

## ARTICLE VII.
## SUBCHAPTER V CONSIDERATIONS

7.1     Consensual Plan; Cramdown.   The Debtor seeks confirmation pursuant to § 1191(a).  However, if any voting class does not carry, then the Debtor will seek confirmation of the Plan on cramdown pursuant to 1191(b).  The Plan does not discriminate unfairly and is fair and equitable.  The Plan satisfies the requirements of § 1191(c).

7.2     Disposable Income.  In satisfaction of § 1129(a)(11), and as evidenced by **Exhibit A** to the Plan, the Plan provides that Disposable Income Payments and Quarterly Payments will be applied to make payments under the Plan for a Repayment Period of forty-eight (48) months.  The Disposable Income Payments and Quarterly Payments are equivalent to the Debtor's Projected Disposable Income as the term is defined in sections 1191(c) and (d).  To the

Error! Unknown document property name.

extent necessary, the Debtor will present evidence at the Confirmation Hearing in satisfaction of § 1129(a)(11) and 1191(c)(3)(A)(i) and (ii) as applicable.

      7.3    <u>Plan Default</u>.  Any Creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law.  In addition to any rights specifically provided to a Creditor treated pursuant to this Plan, the failure by the Reorganized Debtor to make a payment to a Creditor pursuant to the terms of this Plan shall be an event of default as to such payments if the payment is not cured within ten (10) days after a Creditor mails a written notice of default to the Reorganized Debtor.  The Creditor must mail the 10-day notice to cure to the last known address of the Reorganized Debtor.  The Reorganized Debtor will inform each Creditor of any new address for mailing notices.  If the Reorganized Debtor does not cure the delinquency within the 10-day cure period, then and only then will the Creditor be allowed to exercise any and all rights and remedies under applicable non-bankruptcy law to collect such claims, including the right to undertake foreclosure upon any collateral securing the obligation, or seek such relief as may be appropriate in the Bankruptcy Court.  For the avoidance of doubt, the Reorganized Debtor's last-known address as of the Effective Date is 113 Cambridge Park Trail, Weatherford, Texas 76088.

      7.4    <u>Liquidation Analysis</u>.  Pursuant to § 1190(1)(B), attached to the Plan as **Exhibit B** is a true and correct copy of the liquidation analysis of the Debtor.  Pursuant to the same, the Plan is in the best interests of Creditors.

**ARTICLE VIII.**
**TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS**

      8.1    <u>Objection Deadline</u>.  Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.  Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.  Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Disputed Claim may be litigated to Final Order.  The Reorganized Debtor may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.  Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

      8.2    <u>Creditor Response to Objection</u>.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further

Error! Unknown document property name.

notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

8.3     <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release, or impair the Debtor's or other appropriate party-in-interest's right to object to any Claim.  A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

8.4     <u>Miscellaneous Provisions for Disputed Claims</u>.  Nothing contained in this Plan or the Confirmation Order shall change, waive, or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise.  The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim.  Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Fort Worth Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain.  Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.

8.5     <u>Allowance of Disputed Claims</u>.  All Disputed Claims shall be liquidated and determined as follows:

8.5.1     <u>Application of Adversary Proceeding Rules</u>.  Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.  However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings.  The Reorganized Debtor may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

8.5.2     <u>Scheduling Order</u>.  Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof.

8.5.3     <u>Mediation</u>.  The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim.  The Reorganized Debtor may include a request for mediation in its objection and request that the Court require mediation as part of the scheduling order.

8.5.4     <u>Substantial Consummation</u>.  All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other

Error! Unknown document property name.

actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

      8.5.5  <u>Offsets</u>.  All rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan, are preserved and vest in the Reorganized Debtor.

8.6    <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

## ARTICLE IX.
## EFFECTS OF PLAN CONFIRMATION

9.1    <u>Discharge of Claims</u>.  The Debtor shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; the Debtor shall receive a discharge on the Effective Date pursuant to Bankruptcy Code sections 1191(a) and 1141(d)(1)–(4), and (6) if the Plan is confirmed pursuant to § 1191(a). *See* 11 U.S.C. §§ 1141(d)(1)–(4), (6), 1181(a), 1191(a). If the Plan is confirmed pursuant to §1191(b), the Debtor will receive a discharge pursuant to § 1192.

      9.1.1  <u>Consensual Plan – Discharge Under § 1141(d)</u>.  If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor or the Estate or any of its property, or against the Reorganized Debtor, on account of a Claim or Debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate or its property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; (iii) creating, perfecting, or enforcing in any manner directly or indirectly, any lien, charge, or encumbrance of any kind against the Debtor or the Estate or its property, or against the Reorganized Debtor, on account of a Claim, interest, lien, or Debt that is discharged under this Plan, unless specifically and expressly permitted in this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtor or the Estate or its property, or against the Reorganized Debtor, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action

Error! Unknown document property name.

commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

9.1.2   <u>Cramdown Plan – Discharge Under Bankruptcy Code § 1192</u>.  If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtor shall receive a discharge "as soon as practicable after completion by the [Debtor] of all payments due within the [Repayment Period]." *See* 11 U.S.C. § 1192.  Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtor, the Reorganized Debtor, or the Estate or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section Bankruptcy Code section 501; (2) a Claim or interest based upon such debt, right, or interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or interest has accepted the Plan.

9.2   <u>Exculpation</u>.   Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor or the Estate may have or be able to assert against (i) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders and (ii) any director, officer, manager, or fiduciary of the Debtor, in each case solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or willful misconduct.  The foregoing does not affect, prejudice, or release any claim or cause of action that any Person may have against any of the foregoing that is personal to such Person and is not a claim of the Estate.  Nothing in this Plan, and nothing in the foregoing, waives any objection or other issue related to any Professional Claim.

Error! Unknown document property name.

## ARTICLE X.
## FORD SETTLEMENT AGREEMENT

10.1    Ford Settlement Agreement.  This Article X of the Plan constitutes a motion for approval of a compromise pursuant to Fed. R. Bankr. Proc. 9019.  Article X contains the agreed-to terms of the Ford Settlement Agreement as between Ford and the Debtor.  The Release Agreement constitutes additional material consideration as between Ford and the Debtor.

10.2    Allowance of Ford Claim.  By agreement between Ford and the Debtor-in-Possession, the Ford Claim shall be fully and finally administered, allowed, and disallowed, as applicable, as the Ford Settlement Claim.

10.3    Monthly Reporting.  During the Repayment Period, the Reorganized Debtor shall provide Ford with monthly operating reports in substantially the same form as those currently filed in the Bankruptcy Case, including providing signature under penalty of perjury that each monthly report is true, correct, and complete.

10.4    Limitations on Operational Cost.  During the Repayment Period, the Reorganized Debtor shall abide by the following limitations:

a.   The Reorganized Debtor shall be permitted to operate its business in the Ordinary Course, including, but not limited to, reasonable raises and compensation of employees, equipment purchases, and other operational expenses.

b.   The Reorganized Debtor shall circulate a budget detailing the anticipated operating expenses for the upcoming fiscal year to Allowed Unsecured Creditors within thirty (30) days prior to the start of the fiscal year during the Repayment Period.

c.   Where the Reorganized Debtor seeks to engage in a Significant Expenditure that was not accounted for or otherwise known at the time the budget referenced in the above section was created, the Debtor-in-Possession shall provide written notice to Allowed Unsecured Creditors at least ten (10) Business Days in advance, detailing the nature and terms of same.  Allowed Unsecured Creditors shall have ten (10) Business Days, during which time the Debtor-in-Possession will not take action, to object to or approve the proposed expenditure.

d.   Where the Reorganized Debtor seeks to engage in an action or transaction that is outside the Ordinary Course, the Reorganized Debtor shall provide reasonable notice at least ten (10) Business Days in advance of such action or transaction to Allowed Unsecured Creditors, who may seek relief from the Bankruptcy Court with respect to the same.  If such relief is sought by any Allowed Unsecured Creditor, the action or transaction shall be stayed until a determination from the Bankruptcy Court may be obtained.  An action or transaction under this provision includes any decision to dissolve, merge, liquidate, or sell any portion of the Reorganized Debtor.

Error! Unknown document property name.

10.5    **Releases:**

      a.  **Except for claims for breach of this Settlement Agreement, the Debtor-in-Possession and its predecessors, successors, and assigns, hereby completely and fully release and discharge Wonderboys, Shrode, Boyer, Ford, and the Ford Estate and their related entities, affiliates, successors, assigns, current and former agents, attorneys, employees, and insurers (hereinafter collectively, the "Ford Claim Releasees") of and from any and all actions, causes of action, claims, counterclaims, debts, demands, obligations, liabilities, liens, losses, and damages of any kind or character whatsoever, whether at law or equity or otherwise, whether known or unknown, contingent, suspected or unsuspected, asserted or unasserted, which they ever had, now have, or may have had against the Ford Claim Releasees, including but not limited to the Claim Objection.**

      b.  **Except for claims for breach of this Settlement Agreement, Wonderboys, Shrode, Boyer, Ford, and the Ford Estate and their respective predecessors, successors, and assigns hereby release the Debtor-in-Possession and its successors, assigns, current and former agents, attorneys, employees, and insurers (hereinafter collectively, the "Debtor-in-Possession Releasees") of and from any and all actions, causes of action, claims, counterclaims, debts, demands, obligations, liabilities, liens, losses, and damages of any kind or character whatsoever, whether at law or equity or otherwise, whether known or unknown, contingent, suspected or unsuspected, asserted or unasserted, which they ever had, now have, or may have had against the Debtor-in-Possession Releasees.**

    10.6   <u>Release Agreement</u>.  The Release Agreement is hereby incorporated into the Plan for all purposes including all representations, provision, and definitions therein.

    10.7   <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall have the continuing and exclusive jurisdiction to implement, interpret, and enforce all matters arising in, arising out of, or relating to the Plan, the Ford Settlement Agreement, and the Release Agreement.

    10.8   <u>Plan Default</u>.  The Reorganized Debtor's failure to abide by any provision of the Settlement Agreement shall constitute a "material default by the debtor with respect to a confirmed plan" as codified in 11 U.S.C. § 1112(b)(4)(N).

Error! Unknown document property name.

10.9    Notice.  For the avoidance of doubt, any of the Parties to the Settlement Agreement must follow the notice procedures detailed in section 7.3 of this Plan in order to enforce their rights concerning a default under this Article.

## ARTICLE XI.
## CONDITIONS PRECEDENT

11.1    Conditions Precedent to Confirmation and Effectiveness of Plan.  The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) all other specific conditions precedent contained in this Plan shall have been satisfied; and (iv) a notice of the Effective Date shall have been filed by the Debtor in the Bankruptcy Case.

11.2    Non-Occurrence of the Effective Date.  If the Plan is confirmed but the Effective Date does not occur: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtor and other parties-in-interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

11.3    Notice of the Effective Date.  On or before five (5) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail to all Persons served with a copy of the Plan a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

11.4    Modification of this Plan.  The Debtor may alter, amend, or modify this Plan under sections 1127 and 1193 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtor or any party-in-interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Confirmation Order, or any other matters as may be necessary to carry out the purposes and effects of this Plan.

11.5    Revocation or Withdrawal of this Plan.  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

Error! Unknown document property name.

11.6    <u>Inadmissible Settlement Offer</u>.  If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtor.

**ARTICLE XII.**
**<u>RETENTION OF JURISDICTION AND CLAIMS</u>**

12.1    <u>Jurisdiction of Bankruptcy Court</u>.    Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction:

12.1.1    To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

12.1.2    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

12.1.3    To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

12.1.4    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

12.1.5    To construe and to take any action to enforce this Plan and the Confirmation Order;

12.1.6    To issue such orders as may be necessary for the implementation, execution, and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

12.1.7    To hear and determine any applications to modify this Plan to cure any defect or omission or to reconcile any inconsistency in this Plan or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

12.1.8    To hear and determine all applications for Administrative Claims;

12.1.9    To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents, or instruments executed in connection with this Plan;

12.1.10    To determine such other matters and for such other purposes as may be provided in the Confirmation Order and to supervise for all purposes, aid, extend the term of, and otherwise adjudicate all matters relevant to distributions under the Plan;

Error! Unknown document property name.

12.1.11   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

12.1.12   To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtor finds it necessary or appropriate to seek an order authorizing the same;

12.1.13   To enter the Final Decree upon proper request;

12.1.14   To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtor and the Estate free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may due to the same with the same full force and effect;

12.1.15   To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights, and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor, the Reorganized Debtor, or the Estate, as applicable, including, without limitation, matters concerning federal, state, local, and other taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

12.1.16   To hear and determine any Avoidance Actions.

12.2   <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.   If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in, or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

12.3   <u>No Creation of Jurisdiction</u>.   This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.   For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

12.4   <u>Retention and Preservation of General Rights</u>.   Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtor, the Reorganized Debtor, and the Estate retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims;

Error! Unknown document property name.

(ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtor; and (vii) claims and causes of action against any Creditor or person whatsoever.

12.5    Retention and Preservation of Specific Rights.  Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Debtor, the Reorganized Debtor, and the Estate specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudiced as a result of the confirmation of this Plan, and which are transferred to the Reorganized Debtor:

(i)      the Avoidance Actions;

(ii)     the Causes of Action;

(iii)    all objections to Professional Claims and rights to disgorge or recover any prepetition or postpetition payment to any professional; and

(iv)     all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code.

# ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.1    Payment of Statutory Fees.  To the extent applicable, any fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date shall be timely paid by the Reorganized Debtor, subject to the rights of the same to contest the same.

13.2    Exercise of Liens.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and in strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

13.3    No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

13.4    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation, and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

13.5    Substantial Consummation of Plan.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

Error! Unknown document property name.

13.6    <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

13.7    <u>Severability</u>.    Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtor may, in its discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

13.8    <u>Notices and Distributions</u>.  On and after the Effective Date, all notices, requests, and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor.  Any holder of a Claim may designate another address for the purposes of this section by providing the Reorganized Debtor written notice of such address, which notice will be effective upon receipt.

13.9    <u>Unclaimed Property</u>.  If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtor.

13.10    <u>Binding Effect</u>.  The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

13.11    <u>Withholding and Reporting</u>.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.  Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtor shall be authorized, but not required, to deduct from such payments any necessary withholding amount.

13.12    <u>Credit for Non-Debtor Payments</u>. Notwithstanding the Allowance of a Claim under this Plan or otherwise, the Reorganized Debtor shall be entitled to a credit against its obligations under this Plan for each Claim on account of which the holder thereof obtains any recovery from a non-Debtor or from the property of a non-Debtor.  In no event shall a Claim be entitled to more than one, full satisfaction, regardless of source.

Error! Unknown document property name.

## ARTICLE XIV.
## CONFIRMATION REQUEST

The Debtor hereby respectfully requests confirmation of this Plan.

Dated October 28, 2024 at Dallas, Texas.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Thomas Berghman*
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
500 N. Akard St., Ste. 4000
Dallas, Texas 75214
tberghman@munsch.com

*Counsel to the Debtor-in-Possession*

Error! Unknown document property name.

Exhibit A – Four-Year Projections

**Error! Unknown document property name.**

|  |  | Nov-24 | Dec-24 | TOTAL |
|---|---|---|---|---|
| **BEGINNING CASH BALANCE** |  | $ 300,000 | $ 304,750 | $ 306,850 |
|  |  |  |  |  |
| **INCOME** |  |  |  |  |
|  |  |  |  |  |
| Sales | 100.00% | $ 135,000 | $ 130,000 | **$ 265,000** |
|  |  |  |  |  |
| **EXPENSES** |  |  |  |  |
|  |  |  |  |  |
| Cost of Goods Sold | 65.00% | $ 87,750 | $ 84,500 | **$ 172,250** |
| Rent |  | $ 4,850 | $ 4,850 | **$ 9,700** |
| Medical insurance |  | $ 7,000 | $ 7,000 | **$ 14,000** |
| Utilities |  | $ 800 | $ 800 | **$ 1,600** |
| Trucks(fuel,maint,ins.) |  | $ 2,500 | $ 2,500 | **$ 5,000** |
| Legal & Accounting |  | $ 500 | $ 500 | **$ 1,000** |
| Payroll |  | $ 24,100 | $ 25,000 | **$ 49,100** |
| Liability insurance |  | $ 750 | $ 750 | **$ 1,500** |
| Freight trucking |  | $ 2,000 | $ 2,000 | **$ 4,000** |
|  |  |  |  |  |
| **Sub Total Expenses** |  | $ 130,250 | $ 127,900 | $ 258,150 |
|  |  |  |  |  |
| **NET OPERATING INCOME** |  | $ 4,750 | $ 2,100 | $ 6,850 |
|  |  |  |  |  |
| **2024 Disposable Income** |  |  |  | **$ 4,795** |

| | | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH BALANCE** | | $ - | $ 445 | $ 890 | $ 6,545 | $ 17,411 | $ 31,750 | $ 43,300 | $ 62,850 | $ 77,189 | $ 89,792 | $ 95,447 | $ 95,893 | $ 94,600 |
| **INCOME** | | | | | | | | | | | | | | |
| Sales | 100.00% | $156,317 | $156,317 | $173,683 | $191,052 | $202,631 | $220,000 | $220,000 | $202,631 | $196,843 | $173,683 | $156,318 | $150,525 | $ 2,200,000 |
| **EXPENSES** | | | | | | | | | | | | | | |
| Cost of Goods Sold | 70.00% | $109,422 | $109,422 | $121,578 | $133,737 | $141,842 | $154,000 | $154,000 | $141,842 | $137,790 | $121,578 | $109,423 | $105,368 | $ 1,540,000 |
| Rent | | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 4,850 | $ 58,200 |
| Medical insurance | | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 90,000 |
| Utilities | | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 9,600 |
| Trucks(fuel,maint,ins.) | | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 33,000 |
| Legal & Accounting | | $ - | $ - | $ - | $ - | $ - | $ 8,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ 8,000 |
| Payroll | | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 324,000 |
| Liability insurance | | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 9,600 |
| Freight trucking | | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 2,750 | $ 33,000 |
| **Sub Total Expenses** | | $155,872 | $155,872 | $168,028 | $180,187 | $188,292 | $208,450 | $200,450 | $188,292 | $184,240 | $168,028 | $155,873 | $151,818 | $ 2,105,400 |
| **NET OPERATING INCOME** | | $ 445 | $ 445 | $ 5,655 | $ 10,866 | $ 14,339 | $ 11,550 | $ 19,550 | $ 14,339 | $ 12,603 | $ 5,655 | $ 445 | $ (1,292) | $ 94,600 |
| **2025 Disposable Income** | | | | | | | | | | | | | | $ 66,220 |

| | | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | | $ 29,672 | $ 30,810 | $ 31,947 | $ 38,685 | $ 51,024 | $ 67,097 | $ 80,772 | $ 102,447 | $ 118,521 | $ 132,728 | $ 139,466 | $ 140,603 | $ 139,873 |
| INCOME | | | | | | | | | | | | | | |
| Sales | 100.00% | $ 168,040 | $ 168,040 | $ 186,710 | $ 205,381 | $ 217,828 | $ 236,500 | $ 236,500 | $ 217,828 | $ 211,606 | $ 186,710 | $ 168,042 | $ 161,815 | $ 2,365,000 |
| EXPENSES | | | | | | | | | | | | | | |
| Cost of Goods Sold | 70.00% | $ 117,628 | $ 117,628 | $ 130,697 | $ 143,767 | $ 152,480 | $ 165,550 | $ 165,550 | $ 152,480 | $ 148,124 | $ 130,697 | $ 117,629 | $ 113,270 | $ 1,655,500 |
| Rent | | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 66,000 |
| Medical insurance | | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 91,200 |
| Utilities | | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 825 | $ 9,900 |
| Trucks(fuel,maint.ins.) | | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| Legal & Accounting | | $ - | $ - | $ - | $ - | $ - | $ 8,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ 8,000 |
| Payroll | | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 28,500 | $ 342,000 |
| Liability insurance | | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 10,200 |
| Freight trucking | | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| Sub Total Expenses | | $ 166,903 | $ 166,903 | $ 179,972 | $ 193,042 | $ 201,755 | $ 222,825 | $ 214,825 | $ 201,755 | $ 197,399 | $ 179,972 | $ 166,904 | $ 162,545 | $ 2,254,800 |
| NET OPERATING INCOME | | $ 1,137 | $ 1,137 | $ 6,738 | $ 12,339 | $ 16,073 | $ 13,675 | $ 21,675 | $ 16,073 | $ 14,207 | $ 6,738 | $ 1,138 | $ (731) | $ 110,200 |
| 2026 Disposable Income | | | | | | | | | | | | | | $ 77,140 |

| | | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | | $ - | $ 3,098 | $ 6,196 | $ 15,315 | $ 30,455 | $ 49,610 | $ 66,786 | $ 91,963 | $ 111,117 | $ 128,265 | $ 137,384 | $ 140,482 | $ 141,572 |
| INCOME | | | | | | | | | | | | | | |
| Sales | 100.00% | $180,643 | $180,643 | $200,713 | $220,785 | $234,165 | $254,238 | $254,238 | $234,165 | $227,476 | $200,713 | $180,645 | $173,950 | $ 2,542,375 |
| EXPENSES | | | | | | | | | | | | | | |
| Cost of Goods Sold | 70.00% | $126,450 | $126,450 | $140,499 | $154,549 | $163,916 | $177,966 | $177,966 | $163,916 | $159,234 | $140,499 | $126,451 | $121,765 | $ 1,779,662 |
| Rent | | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 66,000 |
| Medical insurance | | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 93,600 |
| Utilities | | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 820 | $ 9,840 |
| Trucks(fuel,maint,ins.) | | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 37,200 |
| Legal & Accounting | | $ - | $ - | $ - | $ - | $ - | $ 8,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ 8,000 |
| Payroll | | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | $ 360,000 |
| Liability insurance | | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | $ 10,500 |
| Freight trucking | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | $ 36,000 |
| Sub Total Expenses | | $ 177,545 | $ 177,545 | $ 191,594 | $ 205,644 | $ 215,011 | $ 237,061 | $ 229,061 | $ 215,011 | $ 210,329 | $ 191,594 | $ 177,546 | $ 172,860 | $ 2,400,802 |
| NET OPERATING INCOME | | $ 3,098 | $ 3,098 | $ 9,119 | $ 15,140 | $ 19,155 | $ 17,176 | $ 25,176 | $ 19,155 | $ 17,148 | $ 9,119 | $ 3,098 | $ 1,090 | $ 141,572 |
| 2027 Disposable Income | | | | | | | | | | | | | | $ 99,101 |

| | | Jan-28 | Feb-28 | Mar-28 | Apr-28 | Apr-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | | $ - | $ 4,837 | $ 9,675 | $ 20,985 | $ 38,768 | $ 60,866 | $ 81,438 | $ 110,010 | $ 132,108 | $ 152,049 | $ 163,359 | $ 168,197 | $ 170,876 |
| INCOME | | | | | | | | | | | | | | |
| Sales | 100.00% | $ 194,192 | $ 194,192 | $ 215,766 | $ 237,344 | $ 251,728 | $ 273,305 | $ 273,305 | $ 251,728 | $ 244,537 | $ 215,766 | $ 194,193 | $ 186,996 | $ 2,733,053 |
| EXPENSES | | | | | | | | | | | | | | |
| Cost of Goods Sold | 70.00% | $ 135,934 | $ 135,934 | $ 151,036 | $ 166,141 | $ 176,210 | $ 191,314 | $ 191,314 | $ 176,210 | $ 171,176 | $ 151,036 | $ 135,935 | $ 130,897 | $ 1,913,137 |
| Rent | | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 66,000 |
| Medical insurance | | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 7,900 | $ 94,800 |
| Utilities | | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 830 | $ 9,960 |
| Trucks(fuel,maint,ins.) | | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 38,400 |
| Legal & Accounting | | $ - | $ - | $ - | $ - | $ - | $ 8,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ 8,000 |
| Payroll | | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 32,000 | $ 384,000 |
| Liability insurance | | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 890 | $ 10,680 |
| Freight trucking | | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 3,100 | $ 37,200 |
| Sub Total Expenses | | $ 189,354 | $ 189,354 | $ 204,456 | $ 219,561 | $ 229,630 | $ 252,734 | $ 244,734 | $ 229,630 | $ 224,596 | $ 204,456 | $ 189,355 | $ 184,317 | $ 2,562,177 |
| NET OPERATING INCOME | | $ 4,837 | $ 4,837 | $ 11,310 | $ 17,783 | $ 22,098 | $ 20,572 | $ 28,572 | $ 22,098 | $ 19,941 | $ 11,310 | $ 4,838 | $ 2,679 | $ 170,876 |
| 2028 Disposable Income | | | | | | | | | | | | | | $ 119,613 |

Exhibit B – Liquidation Analysis

Error! Unknown document property name.

| | | |
|---|---|---|
| Cash | $ | 54,840 |
| Accounts Receivable | $ | - |
| Inventory | $ | 15,000 |
| Office Equipment | $ | 2,700 |
| Shop Tools, Trailers, and Equipment | $ | 1,500 |
| Automobiles | $ | 57,000 |
| Prepaid FIT | | |
| Causes of Action | $ | - |
| Avoidance Actions | $ | - |
| **Total Assets** | $ | 131,040 |
| | | |
| Less Secured Creditor Recovery (Customer deposits) | $ | (131,040) |
| Pre-Bankruptcy - A/P | | |
| Post Bankruptcy - A/P | | |
| N/P - Ford | | |
| Less Non-Professional Administrative Chapter 11 Claims | $ | - |
| Estimated Professional Chapter 11 Claims | $ | (30,000) |
| Estimated Subchapter V Trustee Administrative Claim | $ | (3,500) |
| Less Estimated Ch. 7 Trustee Professionals Fees | $ | (5,000) |
| | | |
| Estimated Unsecured Creditors Claims Pool After Expected Objections | $ | 1,700,000 |
| | | |
| Estimated Percentage Recovery | | |
| Liquidation | | 0% |
| Plan | | 6% |

Exhibit C - Ford Settlement Agreement

## MUTUAL RELEASE AGREEMENT

THIS MUTUAL RELEASE AGREEMENT (the "Release Agreement") is effective as of __, 2024 (the "Effective Date") by and between New-Tronics, Ltd. (the "Debtor-in-Possession" or "Debtor"), Wonderboys, LLC ("Wonderboys"), Roy Shrode ("Shrode"), Michael Boyer ("Boyer"), Vicki Ford ("Ford"), and the probate estate of Alice and Clyde Ford (the "Ford Estate," each individually a "Party" and collectively the "Parties"). This Release Agreement is subject to Bankruptcy Court's approval, under Federal Rule of Bankruptcy Procedure 9019, of the Ford Settlement Agreement in Article X of the Debtor's First Amended Chapter 11 Subchapter V Plan of New-Tronics Ltd. (the "Plan") filed in *In re New-Tronics Ltd.*, No. 23-42553-elm-11 (the "Bankruptcy Case") and is not effective until court approval is obtained.

WHEREAS, on August 29, 2023 (the "Petition Date"), the Debtor-in-Possession filed a voluntary petition under chapter 11, subchapter V, of title 11 of the United States Code (the "Bankruptcy Code"), commencing the chapter 11 subchapter V Bankruptcy Case, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court");

WHEREAS, on November 3, 2023, Ford filed proof of claim number 7-1 (the "Ford Claim") in the amount of $2,113,858.38, including a secured claim of $1,885,585.66, individually and in her capacity as executrix of the Ford Estate for unpaid amounts owed under a secured promissory note and for unpaid distributions to a limited partner;

WHEREAS, on January 10, 2024, the Debtor-in-Possession filed its *Debtor's Objection to Claim No. 7 Filed by Vicki Ford* [Docket No. 78] (the "Claim Objection") to the Ford Claim, asserting that the Ford Claim should be subordinated, that the Ford Claim was barred by the four-year statute of limitations, that the portion of the Ford Claim based on unpaid equity was unfounded, and that the Ford Claim should be recharacterized as unsecured debt;

WHEREAS, on February 9, 2024, Ford filed her *Response to Debtor's Objection to Claim No. 7 Filed by Vicki Ford* [Docket No. 82], asserting that subordination does not apply to the Ford Claim, the statute of limitations does not bar the Ford Claim, Debtor characterized the "unpaid equity" as distributions to which Ford is entitled, and the Ford claim remains secured;

WHEREAS, while no hearing has been held on the Ford Claim, the Parties have been engaged in good-faith negotiations to resolve the Ford Claim and pending Claim Objection;

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements set forth in Article X of the Plan, valuable consideration (the receipt and sufficiency of which are hereby acknowledged), and the Release Agreement herein, the Parties agree as follows:

1.    Claim Resolution. The Ford Claim shall be resolved according to Article X of the Plan subject to approval by the Bankruptcy Court.

2.    <u>Releases</u>:

a.  In consideration of the covenants, agreements, and undertakings of the Parties under this Release Agreement and Article X of the Plan, each Party, on behalf of itself and its predecessors, successors, and assigns, hereby completely and fully releases and discharges all other Parties, both collectively and individually, and their related entities, affiliates, successors, assigns, current and former agents, attorneys, employees, and insurers of and from any and all actions, causes of action, claims, counterclaims, debts, demands, obligations, liabilities, liens, losses, and damages of any kind or character whatsoever, whether at law or equity or otherwise, whether known or unknown, contingent, suspected or unsuspected, asserted or unasserted, save and except for claims arising out of breach of this Release Agreement or the Ford Settlement Agreement contained in Article X of the Plan, which the Parties ever had, now have, or may have against each and every other Party, both collectively and individually, including but not limited to the Claim Objection.

3.    <u>Attorneys' Fees</u>. Each Party shall bear its own attorney's fees and costs incurred in the Ford Claim, Claim Objection, and through the execution of the Release Agreement.

4.    <u>Governing Law</u>. This Release Agreement shall be governed by the laws of the State of Texas without regard for its conflict of laws principles and federal law where applicable.

5.    <u>Jurisdiction and Venue</u>. Should any dispute arise under this Release Agreement, the Parties agree that the exclusive jurisdiction and venue for such disputes shall be the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division or any other court in the Northern District of Texas.

6.    <u>Effective Date</u>: The Effective Date of the Release Agreement is the effective date of any confirmed chapter 11 plan to be filed by the Debtor-in-Possession.

7.    <u>No Admission</u>. This Release Agreement is a compromise of disputed claims. Nothing contained in this Release Agreement shall be interpreted or construed to be an admission on the part of, or to the prejudice of, either the Ford Claim Releasees or the Debtor-in-Possession Releasees.

8.    <u>Non-Admissibility</u>. Pursuant to Federal Rule of Evidence 408, this Release Agreement and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Release Agreement.

9.    <u>Entire Agreement</u>. This Release Agreement constitutes the entire agreement between the Parties with respect to subject of the Release Agreement and shall supersede any prior understandings with respect to this settlement, whether written or oral. No representations,

warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Release Agreement.

10.     No Construction Against Drafter.  This Release Agreement shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Release Agreement, no provision of this Release Agreement shall be construed or interpreted against any Party because such provision, or this Release Agreement as a whole, was purportedly prepared or requested by such Party.

11.     No Waiver.  No failure to exercise and no delay in exercising any right, power or remedy under this Release Agreement shall impair any right, power or remedy which any Party may have, nor shall any such delay or failure be construed to be a waiver of any such rights, powers or remedies or an acquiescence in any breach or default under this Release Agreement, nor shall any waiver of any breach or default of any Party be deemed a waiver of any default or breach subsequently arising.

12.     Headings.  The headings set forth in this Release Agreement are for purposes of convenience only and shall not be construed as affecting the meaning or interpretation of the text of this Release Agreement.

13.     Counterparts.  This Release Agreement may be signed in counterparts, and the separate signature pages executed by the Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.  Facsimile or electronically transmitted signatures are effective as originals.

14.     Authority to Enter into the Release Agreement.  Each Party represents and warrants that he/she has the right, authority, and capacity to execute this Release Agreement.

15.     Consultation with Counsel.  Each of the Parties represents and warrants that he/she has had the opportunity to consult and receive advice from independent legal counsel, and he/she has carefully read and fully understands all of the provisions of this Release Agreement.

16.     No Oral Modifications.  This Release Agreement may not be amended, modified, altered, waived, or otherwise changed in any manner except by a writing signed by the Parties.

17.     Severability of Provisions.  Should any provision of this Release Agreement be declared or determined by any court of competent jurisdiction to be wholly or partially illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal, invalid, or unenforceable part, term, or provision shall be deemed not to be a part of this Release Agreement.

18.     Binding Effect and Benefit.  This Release Agreement shall be binding upon and inure to the benefit of the Parties and their respective parents, subsidiaries, members, affiliates, related entities, partners, successors, and assigns.

19.     Further Assurances.  Each Party agrees to execute or cause their respective counsel to execute, such further and additional documents, instruments, and writings as may be necessary,

proper, required, desirable, or convenient for the purpose of fully effectuating the terms and provisions of this Release Agreement.

20. <u>Conflict with Other Provisions</u>. To the extent that this Release Agreement conflicts with the Plan, the terms of the Plan control.

**[SIGNATURES ON NEXT PAGE]**

NEW-TRONICS, LTD., DEBTOR-IN-POSSESSION

Signature: _Michel Boye_

Name: _Michael Boyer_

Title: _President of New-Tronics, LTD._

Date: _Oct 25_ , 2024

WONDERBOYS, LLC

Signature: _Michel Boye_

Name: _Michael Boya_

Title: _Manager of Wonderboys, LLC_

Date: _Oct 25_ , 2024

ROY SHRODE

Signature: _____

Date: _____ , 2024

MICHAEL BOYER

Signature: _Michel Boyn_

Date: _Oct 25_ , 2024

VICKI FORD

Signature: _____

Date: _Oct 24_ , 2024

4869-9927-6530v 2

NEW-TRONICS, LTD., DEBTOR-IN-POSSESSION

Signature: _____

Name: _____

Title: _____

Date: _____, 2024


WONDERBOYS, LLC

Signature: _____

Name: _____

Title: _____

Date: _____, 2024


ROY SHRODE

Signature: _____

Date: _____, 2024


MICHAEL BOYER

Signature: _____

Date: _____, 2024


VICKI FORD

Signature: _____

Date: _____, 2024


4869-9927-6530v.2

THE PROBATE ESTATE OF ALICE AND CLYDE FORD

Signature: _Vicki Ford_

Name: _Vicki Ford_

Title: _EXECUTRIX OF THE ESTATE OF Alice AND Clyde Ford_

Date: _OCT 24_ , 2024